UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAL-MART STORES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 06485 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| HELFERICH PATENT LICENSING, ) | |
| LLC, and DOES 1-10, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Wal-Mart Stores, Inc. ("Plaintiff") brings this action against Helferich Patent Licensing, LLC ("HPL") and Does 1-10 seeking recession of a patent license agreement based on substantial nonperformance or breach, mutual mistake of law, and lack of consideration. Presently before the Court is HPL's motion to dismiss this action and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(1) and Section 4 of the Federal Arbitration Act (the "FAA"). For the reasons set forth below, the Court grants HPL's motion to compel arbitration.

## RELEVANT FACTS

Plaintiff is a Delaware corporation with its principal place of business in Bentonville, Arkansas. (R. 10, Sealed Compl. ¶ 1.) HPL is an Illinois limited liability company with its principal place of business in Chicago, Illinois. (*Id.* ¶ 2.) Plaintiff alleges that Does 1-10, employees and/or agents of HPL whose names and capacities are unknown to Plaintiff, are responsible in some manner for the occurrences at issue. (*Id.* ¶¶ 3-4.)

HPL owns numerous patents covering "commercially significant developments" in the fields of wireless content provisioning and messaging, wireless/cellular handsets, and wireless

services/infrastructure. (*Id.* ¶ 8.) In 2011, Plaintiff and HPL negotiated and executed a Content Patent License Agreement (the "Agreement") in which HPL licensed its patents to Plaintiff, released claims relating to the patents, and covenanted not to sue Plaintiff for Plaintiff's use of the licensed technology. (*Id.* ¶ 10; R. 23, Ex. A, Agreement.) Plaintiff paid $500,000 as consideration for the Agreement (the "License Payment"). (*Id.*)

Section 2(b) of the Agreement contains a warranty provision that states that HPL represents and warrants that "[n]o licenses or other rights have been granted or will be granted under the Licensed Patents and Applications that would prevent the licenses, covenants, releases and rights granted to [Plaintiff] hereunder." (R. 23, Ex. A, Agreement at 3.) Plaintiff alleges that it relied on this warranty provision when entering into the Agreement and that the warranty provision was a material reason it entered into the Agreement. (R. 10, Sealed Compl. ¶ 12.)

In Section 3(e) of the Agreement, HPL "expressly reserves the right to assert claims, file suit, or maintain causes of actions . . . against Third Parties for the Third Party's Infringement of any Reserved Claim of any of the Licensed Patents and Applications based upon a product, service, system or method within the scope of the Licensed Field . . . ." (R. 23, Ex. A, Agreement at 5.) HPL filed several patent infringement actions in Illinois that were consolidated in district court. (R. 10, Sealed Compl. ¶ 14.) The defendants in those actions moved for summary judgment on the issue of patent exhaustion; on August 14, 2013, the district court granted the defendants' motion, finding that HPL's patent infringement claims were exhausted as a result of prior licenses taken previously by "the entire cellular handset manufacturing industry." (*Id.* ¶ 15.) Plaintiff alleges that because the patents are exhausted by HPL's prior licenses to handset manufacturers, the warranty provision in the Agreement is untrue. (*Id.* ¶ 16.)

Plaintiff alleges that it is thus entitled to rescission of the Agreement and return of the License Payment. (*Id.*)

Section 9(c) of the Agreement contains an arbitration provision that states: "All disputes, controversies, or differences that may arise between the parties out of, or in relation to, or in connection with this Agreement, or for the breach thereof, shall be finally settled in Chicago, Illinois by arbitration under the Rules of the American Arbitration Association." (R. 23, Ex. A, Agreement at 10.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on September 10, 2013, by filing a redacted three-count complaint and a motion to file the complaint under seal. (R. 1, Compl.; R. 3, Mot. File Compl. Under Seal.) On September 20, 2013, the Court granted Plaintiff's motion to file the complaint under seal, (R. 8, Min Order); Plaintiff filed its complaint under seal on October 20, 2013, (R. 10, Sealed Compl.). In Count I, Plaintiff alleges substantial nonperformance or breach of the Agreement by HPL. (*Id.* ¶¶ 20-22.) In Count II, Plaintiff alleges that the parties entered the Agreement based on a mutual mistake of law. (*Id.* ¶¶ 23-26.) In Count III, Plaintiff alleges that HPL failed to provide consideration for the Agreement. (*Id.* ¶¶ 27-28.) Plaintiff seeks rescission of the Agreement in each of its three Illinois common law claims. (*Id.* ¶¶ 20-28.)

On December 6, 2013, HPL moved to dismiss this action and compel arbitration, (R. 18, Def.'s Mot.); HPL filed its sealed motion to dismiss and compel arbitration on December 11, 2013, (R. 23, Def.'s Sealed Mot.). Plaintiff filed a sealed response to HPL's motion on December 31, 2013, (R. 28, Pl.'s Sealed Resp.), and HPL filed a sealed reply on January 23, 2014, (R. 35, Def.'s Sealed Reply). HPL's motion to dismiss this action and compel arbitration is currently before the Court.

## LEGAL STANDARDS

The FAA governs questions of arbitrability in both federal and state courts. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and operates to place arbitration agreements on the same footing as other contracts and ensure that courts enforce agreements to arbitrate, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219-20 (1985). Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion*, 131 S. Ct. at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

When parties have signed an arbitration agreement, the only questions a court may properly decide are threshold questions of substantive arbitrability: whether the parties agreed to arbitrate a particular issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). These threshold questions of substantive arbitrability include: (1) whether the parties are bound by a given arbitration agreement; and (2) whether an arbitration provision in a binding contract applies to a particular type of controversy. *Id.* at 84. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

The FAA permits a federal district court to compel arbitration when there is: (1) a written agreement to arbitrate; (2) a dispute covered by or within the scope of a valid arbitration agreement; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Parties may only be compelled to arbitrate those issues they have agreed to arbitrate. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). If the Court is satisfied that the parties agreed to arbitrate the issues presented, it must promptly compel arbitration. 9 U.S.C. § 4. The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). Once a court is satisfied with its determination that the parties have agreed to arbitrate the issues at hand, the court must compel arbitration and "shall on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. A request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am.*, 363 U.S. at 582-83.

## ANALYSIS

The parties do not dispute that Plaintiff and HPL executed the Agreement and that the Agreement contains a valid and enforceable arbitration provision. (R. 23, Def.'s Sealed Mot. at 1; R. 28, Pl.'s Sealed Resp. at 4.) Rather, the issue is whether Plaintiff's claims seeking rescission of the Agreement fall within the scope of the arbitration provision. HPL argues that the broad arbitration provision clearly requires that Plaintiff's disputes be arbitrated. (R. 23, Def.'s Sealed Mot. at 1.) Additionally, HPL argues that the arbitrator, rather than the Court,

should make the initial decision as to arbitrability of Plaintiff's claims. (*Id.* at 5.) Plaintiff argues that the parties did not agree to arbitrate the issues presented in Plaintiff's claims and instead agreed to have a court decide these issues. (R. 28, Pl.'s Sealed Resp. at 6-9.) Additionally, Plaintiff contends that the question of arbitrability is a threshold matter to be decided by a court, not an arbitrator. (*Id.* at 5.)

I. **Applicable Law**

As an initial matter, the Court will address the parties' dispute over whether Illinois law or federal law applies to this motion. Plaintiff argues that the Court should apply Illinois law because Section 9(c) of the Agreement contains a choice of law provision that states: "This Agreement shall be governed by, construed and enforced in accordance with the substantive and procedural laws of the State of Illinois." (R. 23, Ex. A, Agreement at 10; R. 28, Pl.'s Sealed Resp. at 5.) HPL contends that because the Agreement involves interstate commerce, it is governed by the FAA and thus federal law applies. (R. 35, Def.'s Sealed Reply at 6.)

The FAA is relevant to this case because the Agreement involves interstate commerce. *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) (holding that the FAA applies in federal court to diversity suits that relate to contracts involving interstate or international commerce). The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone*, 460 U.S. at 24. To the extent there are conflicts between state arbitration law and the FAA that would contravene the pro-arbitration policies embodied in the FAA, the FAA applies and preempts such state laws. *See Preston v. Ferrer*, 552 U.S. 346, 360-63 (2008). Generally, "[f]ederal law establishes the enforceability of arbitration agreements, while state law governs

6

the interpretation and formation of such agreements." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, "a general choice of law provision in a contract will not extend to the arbitration clause, absent specific evidence the parties intended it to do so." *BEM I, L.L.C. v. Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, at *6 (N.D. Ill. Dec. 15, 2000) (citation omitted); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) ("[T]he best way to harmonize the choice-of-law provision with the arbitration provision is to read [the choice-of-law provision] to encompass substantive principles that [state] courts would apply, but not to include special rules limiting the authority of arbitrators."). Although the Agreement includes a choice of law provision specifying that the Agreement shall be governed by Illinois law, the Agreement does not contain language evidencing any intent of the parties to specifically opt out of the FAA in favor of the Illinois Uniform Arbitration Act. "But even if the Illinois Uniform Arbitration Act were to control, the analysis and the result would be no different than under the FAA. The language of the FAA and the Illinois Uniform Arbitration Act is essentially the same." *Gillispie v. Vill. of Franklin Park*, 405 F. Supp. 2d 904, 909 (N.D. Ill. 2005). Accordingly, the Court will rely on federal law interpreting the FAA to decide this motion.

## II.    Arbitrability

The Court now addresses the question of who should determine arbitrability—the arbitrator or the Court. HPL argues that the "arbitrator should make the initial decision as to arbitrability because the parties explicitly incorporated the Rules of the American Arbitration Association into the Agreement, including Rule R-7 that provides the arbitrator with authority to decide whether the alleged disputes should be arbitrated." (R. 23, Def.'s Sealed Mot. at 5.) HPL

7

argues that the incorporation of the American Arbitration Association ("AAA") Rules demonstrates the parties' clear and unmistakable intent to delegate all issues, including the initial issue of arbitrability, to the arbitrator. (*Id.* at 5-6.)

In contracts governed by the FAA, the threshold question of "whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*," is generally to be decided by the court, not the arbitrator, "unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *First Options*, 514 U.S. at 944) (internal quotation marks omitted).

The arbitration provision at issue here provides: "All disputes, controversies, or differences that may arise between the parties out of, or in relation to, or in connection with this Agreement, or for the breach thereof, shall be finally settled in Chicago, Illinois by arbitration under the Rules of the American Arbitration Association." (R. 23, Ex. A, Agreement at 10.) Rule 7 of the AAA Commercial Arbitration Rules states, with respect to jurisdiction, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Rule R-7(a).

"[W]here the parties agree to arbitration pursuant to the rules of the American Arbitration Association ("AAA"), the parties incorporate the AAA's rules into the arbitration agreement." *Dunston v. R.H. Love Galleries, Inc.*, No. 07 CV 5113, 2008 WL 2339564, at *2 (N.D. Ill. Jun. 4, 2008) (citing *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 (7th Cir. 1976)). While neither the Supreme Court nor the Seventh Circuit have resolved whether incorporation of the AAA Rules constitutes "clear and unmistakable" evidence that the parties intended the question of arbitrability to be decided by an arbitrator, other circuits have drawn this

8

conclusion. *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *see also Haire v. Smith, Currie & Hancook LLP*, 925 F. Supp. 2d 126, 132 (D. D.C. 2013) (collecting federal appellate and district court cases). Additionally, other courts in this District have agreed with the various appellate courts in other circuits and come to the same conclusion. *See Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability." (citing *Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc.*, No. 04 C 5829, 2004 WL 2931284, at *4 (N.D. Ill. Dec. 9, 2004))); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, No. 10-cv-6896, 2011 WL 307617, at *4 (N.D. Ill. Jan. 28, 2011) ("[T]he Court finds that by specifically incorporating the Commercial Arbitration Rules of the American Arbitration Association into their agreement, the parties clearly and unmistakably evidenced their intention to grant the arbitrator the authority to determine whether their dispute is arbitrable."); *see also Price v. NCR Corp.*, 908 F. Supp. 2d 935, 945 (N.D. Ill. 2012) (Castillo, J.) (holding that by adopting the AAA Rules in their arbitration agreement, the parties agreed that an arbitrator would determine whether the agreement authorized class arbitration). Accordingly, the Court finds that by incorporating the AAA Rules, including Rule 7(a), into the arbitration provision, Plaintiff and HPL clearly and unmistakably agreed to have an arbitrator decide whether they agreed to arbitrate Plaintiff's disputes.

In an effort to avoid this result, Plaintiff argues that the parties' incorporation of the AAA Rules into the Agreement is not determinative because the parties agreed not to arbitrate the issues of invalidity, unenforceability, and rescission. (R. 28, Pl.'s Sealed Resp. at 6.) Plaintiff argues that Section 9(h) of the Agreement expressly reserves the issues of invalidity, unenforceability, and rescission for the Court to decide. (*Id.* at 6-7). Section 9(h) provides: "If any provision of this Agreement shall be deemed by a Court of competent jurisdiction and last resort to be invalid, unenforceable, or rescinded as against public policy or for any other reason, such provision shall be deemed stricken from this Agreement." (R. 23, Ex. A, Agreement at 11.) HPL argues that Section 9(h) is simply a severability clause that does not create an exception to the broad arbitration provision. (R. 35, Def.'s Sealed Reply at 2.) Plaintiff and HPL therefore disagree over whether they agreed to arbitrate issues regarding rescission of the Agreement. What issues the parties agreed or did not agree to arbitrate is a question of arbitrability, *Howsam*, 537 U.S. at 83, which the Court has already determined the parties intended for the arbitrator to decide. Thus, the Court need not decide whether Section 9(h) requires that a court decide Plaintiff's disputes seeking rescission; that is an issue the arbitrator must resolve when determining whether Plaintiff's disputes fall within the scope of the arbitration provision. *See Terminix*, 432 F.3d at 1333 (refusing to resolve the plaintiff's disputes regarding the validity of the arbitration clause after finding that the parties intended for the arbitrator to decide the question of arbitrability).

Accordingly, because the Court is satisfied that the parties agreed to arbitrate, it must compel arbitration. 9 U.S.C. § 4. HPL incorrectly argues, however, that the Court should dismiss Plaintiff's suit. (R. 23, Def.'s Sealed Mot. at 7.) The Seventh Circuit has held that district courts should retain jurisdiction over a suit that is referred to another forum for resolution

of an issue. *Tice v. Am. Airlines*, 288 F.3d 313, 318 (7th Cir. 2002). District courts should await the outcome of arbitration before dismissing a suit "to spare the parties the burden of a second litigation should the arbitrators fail to resolve the entire controversy." *Id.* Thus, "the proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss outright." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005); *see also Tice*, 288 F.3d at 318-19 (converting the dismissal of the plaintiffs' suit to a stay of the suit pending referral of the parties' dispute to arbitration).[1]

---

[1] Recently in *Johnson v. Orkin, LLC*, the Seventh Circuit affirmed the district court's order compelling arbitration and dismissing the plaintiff's suit without discussing whether a stay would have been more appropriate than a dismissal. No. 14-1130, --- F. App'x ---, 2014 WL 2506422 (7th Cir. Jun. 4, 2014) (unpublished). Seventh Circuit precedent and the overwhelming case law in this District, however, clearly demonstrate that staying the proceedings pending arbitration is the proper course of action. *See Cont'l Cas. Co.*, 417 F.3d at 732 n.7; *Tice*, 288 F.3d at 318. Additionally, the Seventh Circuit noted in *Johnson* that an arbitration clause is simply a type of forum-selection clause, and therefore a motion seeking dismissal based on an agreement to arbitrate should be brought under Federal Rule of Civil Procedure 12(b)(3) for improper venue. 2014 WL 2506422, at *2. The defendant in *Johnson*, like HPL, moved to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. *Id.* Nonetheless, the Seventh Circuit found that this procedural misstep was immaterial because it did not affect the outcome of the appeal. *Id.* This Court similarly concludes that here, a motion brought under Rule 12(b)(3) would have an identical resolution to HPL's motion under Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, HPL's motion to compel arbitration (R. 23) is GRANTED. The Court will stay this case pending arbitration.

ENTERED: /s/ Rubén Castillo
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 17, 2014**